Mr. Justice GRIER
 

 delivered the opinion of the court.
 

 The libellant in this case is owner of a steam-tug called the Zachary Taylor, or Hector.
 

 The claimants are owners of the steam-tug Mabey.
 

 At the time of this collision, on the 11th of August, 1851, they were both engaged in the business of towing vessels into the port of New York from the neighborhood of Sandy Hook.
 

 The Hector was an old, heavy- boat, some one hundred and e ghty or cne hundred and ninety feet- long; the Mabey anew, •ght boat, of about one hundred feet in length,' and mueh the swifter of the tw.o, in the ratio of about fourteen to eight.
 

 
 *453
 

 .
 
 They were each looking out for employment about noon of that day, when the brig Wanderer was passing in, by Sandy Hook, sailing slowly in a northwest course. The two steam-tugs must have been some two or three miles apart, when they each started for the brig in different directions, in order to tender their services. Each boat put on all its steam, as the first who could hail the brig would be entitled to the job.
 

 The Hector, being in the rear, came up in the wake of the brig, and nearly on her course. The Mabey came in S. S. E. course, meeting the brig in an acute angle to its course. As they came together near the starboard quarter of the brig, their respective distances from her at the time of starting must have been in the ratio of their velocities. The Mabey, being much the fastest boat, no doubt expected to make up for this difference of distance by her- superior fleetness.
 

 According to the established rules for navigating boats under such circumstances, the Hector, which was following in the wake of the brig, -should come up on her starboard quarter, and slack her engine, so as not to pass the brig. The Mabey, which was coming down in the opposite direction, ought to round to, either to windward or leeward, so as to head the same . way as the brig. Had these well-known rules been observed, no collision would have occurred in consequence of the face for precedence.
 

 • Cases may occur in which two steamboats engaged in unlawful racing may recklessly or wilfully dash against each other ; and the courts, treating them both as criminals, may refuse to sustain an action or decide which was most to blame, leaving each to suffer the consequences of his own folly and recklessness. .
 

 We do not think that the testimony shows this to be such a case. Each Of these boats had a right to move as fast as it could in order to obtain precedence,- and each had a right to expect that the other would pursue the customary and proper course in navigating their vessels, in such. circumstances, by the observance of which there would be no danger of collision.
 

 Have both these boats, in theif anxiety for precedence; disregarded the proper, precautions to avoid a collision, or. is the
 
 *454
 
 fault wholly to be attributed to the mismanagement of the Mabey ?
 

 The defence set up in the answer, that the Mabey “got to the brig first, slacked her speed, slowed and stopped, and that the Hector attempted to pass under the bows of the Mabey, and m executing that manoeuvre, with the covetous desire of getting the right to tow the brig,-she ran against the Mabey, obliquely,” &c., is clearly and satisfactorily proven to be not true. The fact that the stem of the Mabey, the lighter and swifter boat, was driven into the starboard bow of the Hector, stripping ‘her guards down to the wheel, shows conclusively, that the Mabey was not stopped, b.ut was under nearly full headway,-
 

 If the collision had occui’red as stated in the answer, the great momentum of the larger boat would most probably have sunk the smaller.
 

 The witnesses- on the Hector all concur " that, though the engineer was directed to proceed with his utmost dispatch, the Hector followed in the wake of the brig, and when near to her had slacked her speed and stopped her wheel, so as to lap'on the stern of the brig as she came alongside of her starboard quarter, and within twenty feet of her; and that she was nearly at rest when the Mabey ran' with all her force, into the starboard bow of the Hector. As these witnesses are all confirmed by the pilot of the brig, who was an impartial observer of the whole transaction, his statement may be fairly taken as a correct representation of it.
 

 He states that he first saw the' Hector about a mile distant, heading towards the brig, about northwest; that she came up to the brig in about ten minutes, stopped her engine when she came within one hundred to two hundred yards of the brig, and then came alongside with the way she had on.; and the captain spoke to the witness. That the brig was going at the rate of about a mile an hour, and the Hector was dropping astern, if anything, when the Mabey ran into her.
 

 That, when he first observed the Mabey, she was about half a mile off, coming southwest or west-southwést; that she was about an eighth of a mile from the brig when the Hector .let-
 
 *455
 
 her steam off; that she continued her course till' she struck the starboard bow of the Hector, and ran into her forward of the wheel-house;. that, when the pilot of the Mabey discovered that he had run'his boat so as to render a . collision inevitable, he ran out of the pilot-house and went aft; that the wheels of the Mabey were in motion till the time of the collision ; that .the Hector could do nothing to avoid the collision, because she had stopped her engine and was falling behind the brig.
 

 The master of the Hector acted on the supposition that the Mabey, according to custom, would round to, and could not anticipate that, contrary to alLrule, she would run into the Hector, as she lay nearly at rest, lapping on the stern of the brig, when a single turn of her wheel, with her great headway, would have run her entirely clear of any danger of collision. Hence, when his pilot told him the Mabey was coming in a direction to run into him, he said, “No, she will go under our stern.” He presumed, and had a right to presume, that the pilot of the Mabey knew his duty, and intended to round to behind the stern of the brig and tug, and not make the reckless attempt to run between them.
 

 The testimony of the pilot of the Mabey, in fact, confirms this view of the ease, and shows the collision to have been occasioned entirely by his own fault, or that of the master, who directed him. He says, “ My instruction was to run close to thebrig’s stern.” The master says, “He expected the Hee,tor would get out of his way;”'and the pilot says, “I
 
 supposed
 
 she would go'on the other, quarter, or else steer outside of me.” In other words, he proceeded in a direction which he knew must produce a collision unless the Hector would get out of. ’his way. It is clear that his intention was to drive the Hector' away from the brig, or compel her to take the consequences. The pilot admits, also, that, he knew the proper way to approach the brig was by rounding to; which would not have brought him within three hundred feet of the point of collision. He admits, also, that he could have gone on either side of the brig, and “knew it was nautical and customary to.come up on the weather quarter, and to round to for a tow, but he had in
 
 *456
 
 structions from the captain to go for the brig, and to get there before the Hector if he could.”
 

 We are of opinion," therefore, that the evidence clearly shows that this collision was occasioned wholly through the fault of ,the master and pilot of the Mabey.
 

 The decree of the Circuit Court is therefore reversed, with costs, and the record remitted with instructions to enter á de- ’ cree in favor of libellant, and have such further proceedings as to justice and right may appertain.