### THE BANK OF KINDERHOOK *vs.* GIFFORD and others.

A default for want of an answer will be set aside, on sufficient excuse being shown, and the defendant allowed to put in an answer, although the defense sought to be set up is that the note sued on was given for money won at play.

THIS was a motion to set aside a default for want of an answer, and to be allowed to answer the complaint. The answer sought to be interposed, as appeared by the plaintiff's affidavit, alleged that the note sued on was given for money won at play.

*C. L. Beall* and *C. B. Cochrane*, for motion.

*W. C. Benton* and *L. Tremain*, opposed.

PECKHAM, J. The objection that it does not appear by the moving papers what defense the defendants wish to interpose, is answered, if any answer be required, by the fact that the papers on the other side show that the answer was read by the plaintiff's attorney before notice of the motion, and the intended defense is therefore known to him. The main question, however, is, should the court permit such a defense to be interposed after a default has been suffered. The default is fully excused. Why then should not this defense be permitted? Because, it is said, that such a defense, against a *bona fide* holder, is inequitable and wrong. What is this but saying that the law is inequitable and wrong? As the law declares that such a note is illegal and void in the hands of a *bona fide* holder, it is the judicial against the legislative judgment. It is no necessary part of a judge's duty to define or declare the wisdom of any legislative enactment. The act being plain, the courts have but one duty, and that is to declare and enforce it. There is no excuse whatever for attempting to evade and nullify it. The legislature has been endeavoring, by all the means known to human ingenuity, to prohibit and prevent the taking of usury. In 1830 the usurious security was

declared to be void, except in the hands of a *bona fide* holder. That being deemed insufficient, it was soon after declared to be absolutely void. Then the taking of usury was declared to be a misdemeanor, and it was made the duty of the criminal courts to call the attention of the grand jury particularly to that offense, and enjoin them specially to inquire as to the violation of that statute. Other enactments were made, to the same end, not necessary to be more particularly alluded to. Yet the courts have steadily frowned upon the spirit of these enactments, and, as to usury and the statute of limitations, have uniformly held that after plea pleaded an answer or pleading should never be amended so as to present either defense. (*Hallagan* ads. *Golden*, 1 *Wend.* 302. *Gourlay* v. *Hutton*, 10 *id.* 595. *Sagory* v. *N. Y. and N. H. R. R. Co.* 21 *How.* 455. *Bates* v. *Voorhies*, 7 *id.* 234.) In the last case the practice is condemned in the opinion and confirmed in the decision. (*Wolcott* v. *McFarlan*, 6 *Hill*, 227. *Lovett* v. *Cowman, Id.* 223. *McQueen* v. *Babcock*, 25 *How.* 229.)

Some decisions are found to go yet further, and to hold that on setting aside a default it should be on condition that neither statute should be pleaded. (*Hawes* v. *Hoyt*, 11 *How.* 454. *Toole* v. *Cook*, 16 *id.* 142.) Both by the same judge. But the weight of authority is decidedly the other way; holding that on opening a default properly excused, the court will not impose as a condition that the defendant shall not set up what is termed a hard or unconscionable defense, as usury, or the statute of limitations. (*Gourlay* v. *Hutton*, 10 *Wend.* 595. *Grant* v. *McCaughin*, 4 *How.* 216.) *Catlin* v. *Gunter* (1 *Kern.* 368) looks in this direction, but decides nothing as to this point. It is not necessary to multiply cases, as the distinction is recognized in most of those before cited, and the point is expressly decided in these two. I think the principle in other decisions is wrong. Instead of extending, I am inclined to limit, and, as far as a court may rightfully do, with a reasonable respect for authority, to overrule it. There should be no selection or choice by the

The Bank of Kinderhook *v.* Gifford.

courts as to what law should be enforced, or what should be evaded or nullified ; what should be favored, and what should be treated with disfavor. The principle and the policy of this favor and disfavor are wrong. Much public good was probably accomplished by the judicial legislation of England in ancient times. But the principle of such legislation is wholly indefensible. The same reason does not obtain here, for the courts to step beyond their jurisdiction. Legislation is had here more easily. Perhaps this may not be an improvement, taken in all its effects ; but bad legislation is more easily remedied. If the statutes be impolitic or wrong in principle, let them be plainly and promptly executed, and their error or impolicy will be the more readily seen and corrected by the law makers. The default in this case being excused, is opened, and the defendants have leave to plead, on payment of ten dollars costs of opposing this motion. But the plaintiff asks leave to discontinue, without costs as to the defendants Gifford and Codman, if the motion be granted, and that is assented to by the defendants. The plaintiff may therefore so discontinue, and an order to that effect may be entered at the plaintiff's option within ten days after service of the defendants' answer. The plaintiff may have that time to elect whether it will discontinue.

[ALBANY SPECIAL TERM, December 29, 1863. *Peckham*, Justice.]